Judge James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ONOMEN UDUEBOR,<br><br>aka Onomen Onohi<br><br>Defendant. | NO. CR19-254<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

Onomen Uduebor participated in a Nigerian tax fraud scheme that involved stealing the identities of Americans in order to file fraudulent tax returns in their names. This scheme involved multiple types of identity theft: both impersonating executives at U.S. companies to trick company employees into sharing employees' information, and using taxpayers' identities to file over 300 false tax returns and to open bank accounts in their names. Pursuant to a plea agreement, Uduebor has pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. To address Uduebor's significant participation in the fraud scheme and to deter such schemes by foreign fraud rings against Americans, while also accounting for Uduebor's early acceptance of responsibility, the United States

United States' Sentencing Memorandum - 1
United States v. Onomen Uduebor, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

respectfully recommends that the Court impose a custodial sentence of 36 months, order a forfeiture money judgment in the amount of $10,000, and order restitution to the IRS in the amount of $122,720.06.

## I.    BACKGROUND

**A.    Uduebor Played a Significant Role in a Stolen Identity Tax Fraud Scheme.**

Between at least February 2016 and April 2017, Uduebor participated in a Nigerian conspiracy to commit stolen identity tax refund fraud. PSR ¶ 10; Plea Agreement at 7, ECF No. 25. This fraud scheme involved two basic steps. First, the conspirators used fraud to obtain employee personal information and wage information from U.S. companies. PSR ¶¶ 11–13; Plea Agreement at 7. Second, the conspirators filed fraudulent tax returns using the stolen taxpayer identities. PSR ¶ 14; Plea Agreement at 8.

For the first step, to defraud the companies, the conspirators sent emails to human-resources employees at U.S. companies in which they impersonated the companies' CEOs or other senior executives. PSR ¶¶ 11–12; Plea Agreement at 7. In these emails, the conspirators directed the recipients to send Form W-2 information for the companies' employees. PSR ¶ 12; Plea Agreement at 7. A typical email requesting W-2 information looked like this:

> From: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
> Sent: Monday, March 21, 2016 7:19 AM
> To: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
> Subject: Request for Employee W-2s
>
> Hi ▉▉▉▉
>
> Could you please email me a Pdf copy of all employees' 2015 W-2s? I would like to make a quick review.
>
> Thanks,
> ▉▉▉▉

United States' Sentencing Memorandum - 2
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

USA-00000079.

In numerous instances, HR employees who believed that the request came from their CEO responded and provided the W-2 information. PSR ¶ 12; Plea Agreement at 7. When an employee expressed hesitancy about sending such sensitive personal information by email, the conspirators used their purported executive role to badger the employee into providing the information. The example below shows an HR employee's email expressing concern and then the conspirators' response:

> Sent: Monday, March 21, 2016 at 8:09 AM
> From: ███
> To: ███
> Subject: RE: Request for Employee W-2s
>
> Hi ███ I am a little uncomfortable emailing this confidential information containing employees' Social Security numbers and birthdates, as our email is not encrypted and the information would not be secure. I'm not sure what you are looking to review with the W-2's, but maybe we can create a specific report from our payroll system for you that does not contain these delicate items. Please advise. Thank you.
>
> Regards,
> ███
>
> From: ███
> Sent: Monday, March 21, 2016 1:13 PM
> To: ███
> Subject: Re: RE: Request for Employee W-2s
>
> ███
>
> Thank you for your 2cents but this request begins right where your comfort ends due to the fact that an external audit process is being carried out by the board which requires the requested employees' information in sight. Let the board worry about encryption and whatnot. Kindly email me the requested documents omitting no detail.
>
> Let me know if you have any worries getting this mailed to me.
>
> Thanks
> ███

USA-00000106 – USA-00000107.

United States' Sentencing Memorandum - 3
United States v. Onomen Uduebor, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The conspirators were able to trick many HR employees into sending W-2 information because they manipulated the email addresses in their messages to hide the true source of the emails. PSR ¶¶ 11–12; Plea Agreement at 7. Specifically, they manipulated the "From" field of the email messages so that they appeared to come from the CEO's or other senior executive's true email account, when they were actually sent from an email account controlled by the conspirators. Plea Agreement at 7. The conspirators also manipulated the "Reply to" field of the email messages so that when the employees responded, the replies went to email accounts controlled by the conspirators. Plea Agreement at 7.

Once the conspirators received the stolen W-2 information for company employees, they turned to the second step of the scheme. Uduebor and his co-conspirators used the stolen personal information to file fraudulent tax returns in the employees' names. PSR ¶ 14; Plea Agreement at 8. They were able to do that because the stolen W-2 information contained the employees' names, addresses, social security numbers, and earned wages. PSR ¶ 12; Plea Agreement at 7. On the fraudulent tax returns, the conspirators claimed that the taxpayers were owed refunds, and they requested that the IRS deposit the refunds to debit cards or bank accounts controlled by the conspirators. PSR ¶ 14; Plea Agreement at 8. Many of those bank accounts were accounts that the conspirators had opened fraudulently, using the stolen identities of the employees. PSR ¶ 14; Plea Agreement at 8. The conspirators emailed each other to distribute the stolen W-2 information, coordinate the filing of false tax returns, and provide updates on the status of filed returns.

As a result of the scheme, the conspirators obtained employee W-2 information from more than a dozen companies. USA-00011900. For example, Victim Company 1 sent W-2 forms for hundreds of employees of Victim Company 1 and an affiliate company. PSR ¶ 13. Using the information stolen from the victim companies, the conspirators filed over 300 fraudulent tax returns in the victim employees' names. PSR

United States' Sentencing Memorandum - 4
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

¶ 16; Plea Agreement at 8. In total, those fraudulent tax returns sought at least $1,456,549 in refunds. PSR ¶ 16. The IRS identified the bulk of the returns as fraudulent, but it did issue $140,232 of the requested refunds. PSR ¶ 16.

Uduebor played a substantial role in this scheme. Uduebor personally filed at least approximately 150 fraudulent tax returns in the names of U.S. taxpayers whose identities had been stolen. PSR ¶ 16; Plea Agreement at 8. The evidence is inconclusive about whether Uduebor personally sent email messages impersonating the executives to obtain the W-2 information, but he at least understood that the group was obtaining the W-2 information by fraud. Plea Agreement at 7. After using the stolen identities to file tax returns, Uduebor tracked the status of filed returns on the IRS website. PSR ¶ 16; Plea Agreement at 8. He also tracked the status of refund payments on the websites for U.S. financial institutions where the conspirators had opened bank accounts to receive the fraudulent refunds. PSR ¶ 16; Plea Agreement at 8. According to Uduebor, he received approximately $10,000 for his participation in the scheme. PSR ¶ 17; Plea Agreement at 8.

**B.    Uduebor's Fraud Scheme Impacted Victim Companies, the IRS, and Hundreds of Individual Taxpayers.**

Although the victim companies were the initial victims of the breaches and the IRS suffered direct monetary loss, the greatest impact of this offense was actually felt by the hundreds of individuals whose identities were stolen and used. For these individuals, Uduebor's scheme had both short-term and long-term impacts of various kinds.

First, some individuals whose identities were used to file false tax returns were then unable to file their real tax returns, because the IRS rejected the filing of a second return in the same name. PSR ¶ 15; Plea Agreement at 8. Those individuals had to take steps to prove their identity to the IRS. PSR ¶ 15; Plea Agreement at 8. They had to waste substantial amounts of time trying to resolve their tax situation with the IRS. Sometimes the process was lengthy and had a financial impact, as a victim's tax refund

United States' Sentencing Memorandum - 5
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was delayed. For example, one victim explained in her statement to the Court that she experienced "a loss of needed funds as it took the IRS a year to investigate and finally release the funds that were due to me." Another victim detailed the time that she spent working with various IRS representatives to address not just her rejected tax return but also a tax preparer account that had been opened using her stolen identity.

Second, the fact that individuals' identities had been stolen caused lasting impacts beyond the filing of the false tax return. Victims experienced stress from not knowing who had their personal information and what it might be used for. Some victims incurred costs to try to protect themselves from future use of their stolen identities. For example, a victim told the Court that having someone take her personal information for this scheme was "terrifying" and "impacted my psychological sense of well-being, a feeling that has never left me." She reported that she "spent hundreds if not thousands of dollars on credit monitoring services for fear of this kind of thing happening again."

Victim companies also expended resources to deal with the breach of their information about employees. This included investigating what had happened. It also included notifying affected employees and providing them guidance or resources. Victim companies are often hesitant to speak up about being victims and to explain the impacts, because they fear that they will suffer further negative impacts from the loss of trust by customers or investors. Although victim impact statements and restitution requests would not result in public disclosure of the companies' names, companies often still fear that the information will be identifiable as linked to them. As a result, the Court may not have access to companies' explanations of the harm that the scheme caused, even though that harm was real.

Finally, the IRS suffered a direct loss as a result of this scheme. The IRS paid out refunds totaling $140,232. PSR ¶ 16. Through various efforts, the IRS was able to recover a small amount of funds that had been paid out. The final restitution owing to the IRS is $122,720.06. PSR ¶ 16. Of course, the cost to the IRS of this scheme and others

United States' Sentencing Memorandum - 6
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

like it is much higher. The IRS needs to devote substantial resources to preventing such fraud in its systems for processing tax returns, investigating the fraud when it occurs, and working with taxpayers to correct their accounts. Ultimately, all American taxpayers bear the burden of paying for the IRS's investigation and prevention efforts, so Uduebor's scheme and others like it impose a significant burden on the country and its taxpayers.

**C.    Procedural History**

A grand jury indicted Uduebor, who was then believed to be residing in Nigeria, in December 2019. Indictment, ECF No. 1. Uduebor later traveled to the United Kingdom, where UK authorities arrested him on September 12, 2023, at the request of U.S. authorities. PSR ¶ 6. Uduebor initially contested his extradition to the United States and filed an appeal when he was ordered extradited. However, in December 2024, he informed the government that he would plead guilty pursuant to a plea agreement. He withdrew his appeal of the extradition order so that he could be extradited to the United States to resolve this case. Uduebor made his initial appearance in the Western District of Washington on March 7, 2025. Less than a month later, on April 3, 2025, Uduebor pled guilty. Plea Agreement, ECF No. 25.

## II.    SENTENCING GUIDELINES CALCULATIONS

**A.    Offense Level**

The government agrees with the sentencing guideline calculation in the PSR. *See* PSR ¶¶ 25–39. For Count 1, the base offense level is 7. U.S.S.G. §§ 2X1.1, 2B1.1(a)(1). Fourteen levels are added for a loss over $550,000 (here, intended loss over $1.4 million). U.S.S.G. § 2B1.1(b)(1)(H). Two levels are added because the offense involved 10 or more victims. U.S.S.G. § 2B1.1(b)(2)(A). Two levels are also added because a substantial part of the fraud scheme was committed from outside the United States. U.S.S.G. § 2B1.1(b)(10)B). Taking into account a 2-point reduction for the Zero-Point Offender Adjustment and a 3-point reduction for acceptance of responsibility, the total

United States' Sentencing Memorandum - 7
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

offense level for Count 1 is 20. For Count 3, there is no calculation of offense level because the guideline is the mandatory consecutive 2-year term required by statute. U.S.S.G. § 2B1.6.

**B.    Criminal History Category**

Uduebor's criminal history score is zero, and his Criminal History Category is I. PSR ¶¶ 42–43.

**C.    Guidelines Range**

For Count 1, the guideline sentencing range based on a total offense level of 20 and a Criminal History Category of I is 33–41 months. PSR ¶ 79. For Count 3, the guideline sentencing range is 24 months of imprisonment, which must be imposed consecutively to the term on Count 1. PSR ¶ 79. Therefore, the guideline imprisonment range for the total sentence on both counts is 57–65 months of imprisonment.

### III.    FACTORS RELATED TO SENTENCING RECOMMENDATION

Uduebor played a substantial part in a Nigerian scheme that involved stealing the identities of hundreds of American taxpayers. Collectively, foreign fraudsters like Uduebor cause vast losses to American individuals every year, knowing that U.S. law enforcement is very unlikely to be able to hold them accountable. To hold Uduebor accountable and to deter him and others who would engage in similar fraud schemes, this Court should order a meaningful sentence of imprisonment. Because Uduebor did choose to accept responsibility before his extradition to the United States, the government respectfully suggests that a sentence of 36 months would be sufficient to achieve the goals of sentencing. The government also requests that the Court order a $10,000 forfeiture money judgment as agreed in the plea agreement, $122,720.06 in restitution to the IRS as stated in the PSR, and a $200 special assessment.

**A.    Nature and Circumstances, and Seriousness of the Offense**

Uduebor participated in a serious offense with hundreds of victims. Uduebor and his co-conspirators' stolen identity refund scheme relied on rampant identity theft. First,

United States' Sentencing Memorandum - 8
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

they stole the identities of company executives so that they could trick HR representatives into giving up employees' W-2 information. Then they stole the employees' identities to file false tax returns. On top of that, they used employees' identities to open fraudulent bank accounts that they could use to receive refunds.

This scheme harmed individual taxpayers, victim companies, and the IRS. As described above, taxpayers had trouble filing their real tax returns, and they expended a large amount of time and emotional energy on resolving their tax situation. This process delayed refunds, sometimes causing problems for taxpayers who relied on receiving the refund funds. Taxpayers have had lasting stress and expenses related to protecting themselves from identity theft. Companies also expended resources, for investigation and notification of employees. The IRS is owed restitution of $122,720.06, but that does not account for the huge amount of money that the IRS must spend on trying to prevent fraud like this, investigating it, and working with affected taxpayers.

Uduebor's participation in this scheme was significant, as he admits that he filed at least about 150 fraudulent tax returns and also participated in tracking the filings and refund payments. That said, Uduebor did not do it alone. Based on the email traffic among conspirators, it appears that Uduebor was one of a handful of people conspiring together. The government also has no evidence that Uduebor received more than the $10,000 that he admits to receiving for his participation in the fraud.

B. **History and Characteristics of the Defendant**

Uduebor has a professional background and supportive family upbringing that should have allowed him to be a productive citizen rather than engaging in fraud. He reports a stable family life in which his parents provided for his needs. PSR ¶ 50. In 2011, he completed a Bachelor of Science degree in computer information science. PSR ¶ 70. Uduebor could have chosen to direct his technical skills toward a legitimate profession. Instead, he chose to participate in criminal activity to enrich himself while harming hundreds of victims.

United States' Sentencing Memorandum - 9
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

However, there are also mitigating aspects of Uduebor's background. He has apparently suffered serious injuries from being shot and experienced trauma as a result. Importantly, Uduebor chose to accept responsibility for this offense early. Although he initially contested his extradition from the UK, he ultimately decided to enter into a plea agreement while he was still in the UK with his extradition appeal pending.

**C.     Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence**

Specific deterrence and general deterrence are both important considerations in this case. Some specific deterrence is necessary to discourage Uduebor from participating in fraud again, especially given his intention to return to Nigeria, where he committed this offense and where co-conspirators remain. However, the need for specific deterrence is reduced by Uduebor's choice to accept responsibility early. His early recognition that he committed the crime and would accept accountability for it suggests respect for the law and appears to make recidivism less likely.

General deterrence is a particularly relevant consideration for this type of case, because foreign fraud schemes cause huge losses both to the U.S. government and to individual American victims, but many of the participants operate from countries where it is very difficult for U.S. authorities to hold them accountable. When U.S. authorities are able to bring such a target into custody, it is important for the sentence to send a deterrent message to others.

Considering both types of deterrence, the government believes it would be appropriate for Uduebor to receive a meaningful sentence of imprisonment but for that sentence also to be moderated in light of his early acceptance of responsibility.

**D.     Need to Protect the Public from Further Crimes**

The need to protect the public from further crimes also supports the requested 36-month sentence. As discussed above, Uduebor intends to return to Nigeria, where co-

United States' Sentencing Memorandum - 10
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspirators likely still reside. A meaningful prison sentence is appropriate to achieve deterrence and thereby protect the public.

E.     **Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

The government's recommended sentence of 36 months would not create unwarranted disparities with other defendants. The undersigned attorney is aware of a few other recent cases in this district that have involved using stolen identities to obtain government funds, including tax refund fraud and Covid-19 unemployment benefits fraud. These comparator cases all involved a higher loss than Uduebor's scheme—intended loss of at least about $2 million and actual loss of at least about $600,000—and the resulting sentences were between 42 months and 100 months.

In *United States v. Rufai*, the defendant received a 5-year sentence for obtaining over $600,000 out of an attempted $2.4 million in claims, which included primarily pandemic unemployment relief funds but also approximately $90,000 in payouts from stolen identity tax refund fraud. Gov. Sentencing Mem., *United States v. Rufai*, No. 3:21-cr-05186-BHS, ECF No. 54 (Sept. 19, 2022). In *United States v. Lawal, et al.*, where Lawal personally caused over $1.3 million in loss from pandemic unemployment claims and also obtained $30,000 from stolen identity tax refund fraud, he received a sentence of 54 months. Gov. Sentencing Mem., *United States v. Lawal, et al.*, No. 3:23-cr-05034-TMC, ECF No. 70 (Jan. 21, 2025). Lawal's co-conspirator, Ambali, personally caused over $1 million in disbursements of pandemic unemployment benefits and received a sentence of 42 months. Gov. Sentencing Mem., *United States v. Lawal, et al.*, No. 3:23-cr-05034-TMC, ECF No. 43 (Mar. 7, 2024). In *United States v. Sparks*, where Sparks was the leader of a scheme to use stolen identities to obtain pandemic unemployment and small business loan benefits, obtained over $1 million in such benefits out of nearly $2 million in applications, used counterfeit driver's licenses for the scheme, and did so despite being sentenced previously to 7.5 years of incarceration for prior fraud and other

United States' Sentencing Memorandum - 11
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | crimes, this Court imposed a sentence of 100 months. Gov. Sentencing Mem., *United States v. Sparks, et al.*, No. 2:21-cr-00189-JLR, ECF No. 74 (May 16, 2023).

In this case, Uduebor's scheme had an intended loss of over $1.4 million and actually caused the issuance of $140,232 in refunds, which is a lower loss than was present in the comparator cases. Uduebor's case also does not present the other aggravating factors from the *Sparks* case. Furthermore, as discussed above, Uduebor's decision to accept responsibility while his extradition was still pending suggests that a lesser sentence is necessary to achieve deterrence and protect the public. Therefore, in comparison to the sentences between 42 and 100 months in the comparator cases, a sentence of 36 months is an appropriate sentence to address Uduebor's offense.

//
//
//

United States' Sentencing Memorandum - 12
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

Uduebor participated in a serious offense that involved rampant identity theft affecting both company executives and hundreds of employees. His scheme harmed those individuals, their companies, and the IRS. To balance the seriousness of Uduebor's conduct with his prompt acceptance of responsibility, the government recommends a 36-month sentence: 12 months on Count 1, consecutive to 24 months on Count 3.

DATED this 23rd day of June, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*s/ Miriam R. Hinman*
MIRIAM R. HINMAN
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4650
Fax: 206-553-0882
Email: miriam.hinman@usdoj.gov

United States' Sentencing Memorandum - 13
*United States v. Onomen Uduebor*, CR19-254

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970